UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CMSI, INC.,

           Plaintiff,

    v.

PACIFIC CYCLE, INC.,

           Defendant.

CASE NO. C06-488JLR

ORDER

## I.  INTRODUCTION

This matter comes before the court on the motion of Plaintiff CMSI, Inc. ("CMSI") for a preliminary injunction (Dkt. # 13).  The court has reviewed the parties' briefing and supporting materials, and finds the motion suitable for disposition without oral argument.  For the reasons stated below, the court DENIES CMSI's motion.

## II.  BACKGROUND

For purposes of this motion only, the court takes all inferences from the evidence in the light most favorable to CMSI.  Ultimately, even under this favorable view of the facts, CMSI cannot prevail on its claim for injunctive relief.

Defendant Pacific Cycle, Inc. ("Pacific Cycle") competes in the motor scooter market with CMSI.  Pacific Cycle has recently begun to sell "Schwinn" brand scooters, extending a trademark that it and its predecessors have used for decades to sell bicycles.

ORDER – 1

CMSI, a substantially smaller entity than Pacific Cycle, sells scooters under the "Twist N' Go" or "TN'G" brands.

Prior to 2004, Pacific Cycle did not sell scooters. Believing it could succeed in the scooter market on the strength of the Schwinn trademark, it approached CMSI to discuss selling CMSI scooters under the Schwinn mark. CMSI had successfully worked with a Chinese manufacturer, the Benzhou Group ("Benzhou"), to homologate one or more models of Chinese scooters for import and legal sale in the United States. CMSI invested substantial resources working with Benzhou during the homologation process. Despite numerous discussions between Pacific Cycle and CMSI, their business relationship never came to fruition.

In February 2005, a CMSI representative saw a display of Schwinn scooters at a trade show. He believed that the Schwinn scooters were copies of CMSI's "Milano" and "Venice LX" model scooters. Although the representative reported what he had seen to Thomas Lynott, the founder and President of CMSI, CMSI took no action.

In November 2005, Mr. Lynott visited a Benzhou manufacturing facility in China. While there, he saw "hundreds" of Schwinn-branded scooters, which he believed were identical to CMSI's Milano and Venice LX models. Lynott Decl. ¶ 20.

In January 2006, CMSI learned that a Bellevue, Washington dealership was selling a Schwinn "Graduate" model scooter. Mr. Lynott examined one of the scooters, and discovered "CMSI" embossed on its headlamp. Mr. Lynott knew that the headlamp was one of the parts that Benzhou had incorporated into its scooter in accordance with CMSI's instructions during the homologation process.

CMSI purchased a Schwinn Graduate scooter, and arranged for an inspection by Joseph Flynn, an experienced scooter mechanic. According to Mr. Flynn, the Graduate

ORDER – 2

is virtually identical to CMSI's Milano model.  Flynn Decl. at ¶ 9 ("[I]t is my conclusion that the Schwinn Graduate scooter is a CMSI Milano . . . scooter with only several trivial differences . . . .").  For purposes of this motion, the court assumes that Pacific Cycle knew that Benzhou manufactured scooters for CMSI, and commissioned Benzhou to manufacture a scooter virtually identical to CMSI's Milano model.

CMSI seeks a preliminary injunction preventing Pacific Cycle from importing, selling, or promoting its 2006 Schwinn Graduate scooter.

### III.  ANALYSIS

**A.    CMSI Must Establish a Likelihood of Success on Its Claim for Reverse Passing Off.**

For purposes of this motion, it suffices to note that a plaintiff seeking injunctive relief must establish, among other things, a likelihood of success on the merits.  Dep't of Parks & Recreation v. Bazaar Del Mundo, Inc., 448 F.3d 1118, 1123 (9th Cir. 2006).  If a plaintiff cannot succeed on the merits as a matter of law, it cannot obtain an injunction. Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902, 913-14 (9th Cir. 1995).

Although CMSI has alleged causes of action under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and various causes of action under Washington law, its motion for injunctive relief is based solely on its cause of action for reverse passing off under the Lanham Act.  Because the court concludes that CMSI cannot, as a matter of law, prevail on its claim for reverse passing off, the court denies CMSI's motion.

Although courts have expressed the Lanham Act's prohibition on reverse passing off in various ways, all agree that the practice entails selling another's goods as one's own.  In the prototypical case, a party "purchases or otherwise obtains a second party's goods, removes the second party's name, and then markets the product under its own

ORDER – 3

name." <u>Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.</u>, 7 F.3d 1434, 1437 (9th Cir. 1993). A defendant who does not remove a plaintiff's trademark may "also be guilty of reverse passing off by selling or offering for sale another's product that has been modified slightly and then labeled with a different name." <u>Summit</u>, 7 F.3d at 1437 (quoting <u>Roho, Inc. v. Marquis</u>, 902 F.2d 356, 359 (5th Cir. 1990)). In any event, the crux of the Lanham Act violation is passing off *another's product* as one's own.

The question in this case is whether Pacific Cycle has passed off "another's product." This is not a prototypical case of reverse passing off, because there is no evidence that Pacific Cycle has removed any CMSI mark from any scooter and substituted a Schwinn mark. Instead, Pacific Cycle has used the same manufacturer as CMSI to produce scooters that are virtually identical to CMSI's. In CMSI's view, Pacific Cycle's Schwinn scooters are merely CMSI scooters branded with a different name. CMSI thus declares this "a textbook case of express reverse passing off." CMSI Mot. at 12. Unfortunately for CMSI, the Supreme Court recently revised the textbook.

**B.    CMSI Cannot Prevail Unless It Is the "Origin" of Pacific Cycle's Scooters.**

The prohibition on reverse passing off arises from the Lanham Act's ban on false or misleading designation of the "origin" of "goods." <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 31 (2003) (citing 15 U.S.C. § 1125(a)(1)). Before <u>Dastar</u>, some courts had expressly acknowledged as much. For example, the Second Circuit's oft-cited four-element definition of reverse passing off requires "that the work at issue originated with the plaintiff." <u>Lipton v. Nature Co.</u>, 71 F.3d 464, 473 (2d Cir. 1995). The Ninth Circuit has been less explicit, but has acknowledged that reverse passing off is grounded in the Lanham Act's prohibition on false designation of "origin." <u>See</u> <u>Smith v. Montoro</u>, 648 F.2d 602, 606 (9th Cir. 1981) (citing <u>Truck Equip. Serv. Co. v. Fruehauf Corp.</u>, 536 F.2d 1210, 1216 (8th Cir. 1976)).

ORDER – 4

To prevail on its reverse passing off claim, CMSI must demonstrate that it is the "origin" of the Schwinn Graduate scooter. This requirement is consistent not only with the description of reverse passing off as labeling "another's goods" as one's own, Summit, 7 F.3d at 1437, but also with the opinion of every appellate court that has considered the issue since Dastar. See, e.g., Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp., 419 F.3d 576, 580 (7th Cir. 2005) ("Dastar added that the injury [from reverse passing off] must be a *trademark* loss – which is to say, it must come from a misrepresentation of the goods' origin."); Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc., 457 F.3d 1269, 1277 (Fed. Cir. 2006) (adopting Lipton test); Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 148-49 (5th Cir. 2004).

**C.     CMSI is Not the "Origin" of Any Schwinn-Branded Scooter.**

Having anchored reverse passing off to its Lanham Act roots, the Court in Dastar next considered the meaning of "origin" under the Act. In Dastar, the plaintiffs had produced a collection of videotapes repackaging a 1949 television series. 539 U.S. at 25-26. Dastar, the defendant, edited original recordings of the series to produce a shorter and somewhat different videotape collection, which it sold as its own product without attribution. Id. at 26-27. Reviewing a judgment for the plaintiffs on their claim of reverse passing off, the Court noted the following tension:

> If "origin" refers only to the manufacturer or producer of the physical "goods" that are made available to the public (in this case the videotapes), Dastar was the origin. If, however, "origin" includes the creator of the underlying work that Dastar copied, then someone else, perhaps [a plaintiff], was the origin of Dastar's product.

Id. at 31.

The Dastar Court ultimately rejected the notion that the creator of a product could claim to be its "origin" under the Lanham Act. First, the Court noted that the "most natural understanding of the phrase "'origin' of 'goods'" is "the producer of the tangible

ORDER – 5

product sold in the marketplace." Id. at 31.  It also found that "[t]he concept [of 'origin'] might be stretched . . . to include not only the actual producer, but also the trademark owner who commissioned or assumed responsibility for ('stood behind') production of the physical product." Id. at 31-32.  The Court declined to interpret "origin" to "connot[e] the person or entity that originated the ideas or communications that 'goods' embody or contain." Id. at 32.  The Court thus held that Dastar was the "origin" of its videotape collection.  Id. at 38 (reversing Ninth Circuit).

CMSI's claim of reverse passing off can survive only if it can establish that its role in the development of the scooters in dispute makes it the scooters' "origin."  For several reasons, CMSI cannot do so.

If the court limits CMSI solely to the formulations of "origin" that the Supreme Court expressed in Dastar, Pacific Cycle is the "origin" of the Benzhou-manufactured scooters Pacific Cycle sells.  Pacific Cycle is the "origin" of its scooters in the same way that CMSI is the "origin" of its scooters.  Both entities commissioned Benzhou to manufacture scooters on their behalf.  Although CMSI argues that it falls with the Supreme Court's express definitions of "origin," CMSI Mot. at 13, its argument depends on a misreading of Dastar.  When the Court noted that one who commissions the manufacture of a product can claim to be its "origin," id. at 31-32, it did not suggest that whoever first commissions the manufacture of a product is forevermore the "origin" of all copies of the product.  Copyists who commission a product are, within the Lanham Act, as much the "origin" of the product as whoever first commissioned the product.

Although CMSI cannot succeed by relying on the express formulations of "origin" in Dastar, an alternate formulation that is not inconsistent with Dastar could suffice.  To that end, CMSI proposes that it is the origin of the Schwinn Graduate scooter because it invested "substantial time and resources in homologating" the

ORDER – 6

scooters, including providing design specifications.  CMSI Mot. at 4.  Pacific Cycle, by contrast, avoided this effort and expense by directing Benzhou to copy CMSI scooters.

CMSI admits, however, that its investment in homologating the Benzhou scooter does not generally prevent Pacific Cycle from copying it.  CMSI Mot. at 13 ("[R]everse passing off requires more than just 'copying' . . . .").  Indeed, absent copyright, patent, or trade dress[1] protection for a product, the law encourages others to copy it.  E.g., Summit, 7 F.3d at 1437 ("Although copyists undoubtedly incur the enmity of the product's creator, they serve the public interest by promoting competition and price reductions.") (quoting Roho, 902 F.2d at 359); Bretford, 419 F.3d at 581 ("[F]ederal law encourages wholesale copying, the better to drive down prices.").  If Pacific Cycle had acquired a CMSI scooter and brought it to another manufacturer with instructions to copy it and affix a Schwinn trademark, it would not have engaged in reverse passing off.

The question thus arises:  if using another manufacturer to copy CMSI's scooter is lawful, why is it unlawful to use the same manufacturer as CMSI to copy its scooter?  CMSI correctly notes that Pacific Cycle's use of Benzhou as its manufacturer permits it to gain the benefits of CMSI's collaboration with Benzhou without expending its own resources.  CMSI fails, however, to provide a reason that this practice is offensive *under the Lanham Act*.[2]  Cf. Summit, 7 F.3d at 1439 (noting potential California law claims for misappropriation of the fruits of designer's labor).

---

[1]The Dastar Court observed that a broad construction of "origin" would swallow its trade dress precedents.  539 U.S. at 36-37 (noting that a producer armed with an expansive view of reverse passing off could obtain the equivalent of trade dress protection without showing that his trade dress had acquired secondary meaning).

[2]As the court has previously noted, although CMSI's complaint states alternate theories of relief, including tortious interference with its exclusive manufacturing agreement with Benzhou, CMSI bases the instant motion solely on its claim for reverse passing off.

ORDER – 7

Dastar compels the conclusion that CMSI's contributions to the homologation process do not make it the "origin" of the Schwinn Graduate scooter.  At least one of the Dastar plaintiffs had a colorable claim that it had a role in the creation of the videotape collection, while Dastar itself had no such claim.  539 U.S. at 31.  Nonetheless, the Court declined to equate creation with "origin" under the Lanham Act:

> The consumer who buys a branded product does not automatically assume that the brand-name company is the same entity that came up with the idea for the product, *or designed the product* – and typically does not care whether it is.  The words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to consumers.

Dastar, 539 U.S. at 32-33 (emphasis added); see also id. at 37 (noting that the "origin of goods" in the Lanham Act refers to the producer of the goods, "not the producer of the (potentially) copyrightable or patentable designs that the [product] embodie[s]").

Similarly, there is no reason that the Lanham Act should protect a producer simply because it was the first to create, develop, or manufacture a product.[3]  As the Dastar Court explained:

------

[3]As a practical matter, deeming the producer who first commissions a product to be the "origin" of the product would wreak havoc in the marketplace.  Suppose that Pacific Cycle sought to attribute the Schwinn Graduate to its originator.  Who would it credit?  CMSI?  All CMSI did was homologate an existing Benzhou scooter model.  Benzhou?  The evidence shows that Benzhou copied its scooter from one or more of hundreds of models already on the market, each of which is likely a copy of a preexisting model, in a chain of copying that perhaps leads back to the progenitor of today's motor scooters.  See Dastar, 539 U.S. at 35-36 ("We do not think the Lanham Act requires this search for the Nile and all its tributaries."); see also id. at 35 (describing "serious practical problems" with expansive reading of "origin").

Indeed, if CMSI's view is correct, Pacific Cycle is effectively foreclosed from copying CMSI's scooter.  It cannot designate itself as the origin of the scooter without engaging in reverse passing off; and it cannot designate CMSI as the origin of the scooter without engaging in an unauthorized use of CMSI's name or trademarks.  See id. at 35.  CMSI, which has not patented (and presumably cannot patent) its scooter, would thus become the possessor of a mutant patent of indefinite duration.  Cf. id. at 34 (noting potential for "mutant copyright" arising from expansive view of Lanham Act).

ORDER – 8

[T]he brand-loyal consumer who prefers the drink that the Coca-Cola Company or PepsiCo sells, while he believes that that company produced (or at least stands behind the production of) that product, surely does not necessarily believe that the company was the 'origin' of the drink in the sense that it was the very first to devise the formula.

Id. at 32.  By placing the "Schwinn" mark on a scooter, Pacific Cycle does not signal to consumers that it invented the scooter, developed the scooter, homologated the scooter, or the like.  Instead, it signals that it has produced (or commissioned the production of) the scooter, and stands behind it.  Pacific Cycle therefore properly designates the "origin" of its scooters for purposes of the Lanham Act, and does not violate the Act's prohibition on reverse passing off.

**D.      The Decision in Summit Does Not Alter the Court's Ruling.**

CMSI improperly relies on Summit for the proposition that selling near-copies of a trademarked good obtained from the trademark holder's manufacturer is reverse passing off.  In Summit, the plaintiff designed lathes and contracted with a Chinese manufacturer to produce them.  7 F.3d at 1436.  The defendant later purchased lathes from the same manufacturer.  Id.  Ultimately, both the trial court and the Ninth Circuit found that the defendant's lathes were not sufficiently similar to plaintiff's lathes to support a claim for reverse passing off.  Id. at 1437 (noting outcome of bench trial), 1439 (affirming trial court).  CMSI insists that because the Schwinn Graduate is sufficiently similar to the CMSI Milano, it can succeed in proving reverse passing off where the plaintiff in Summit failed.

CMSI errs, however, in claiming that the Summit court "recognized the viability of an express reverse passing off claim in exactly the same situation as that presented [in this case]."  CMSI Mot. at 14.  There is no indication that the Summit court considered

the viability of such a claim.  At most, the court assumed the viability of the claim[4] en route to deciding the question before it:  whether the trial court erred in finding that the defendant's lathes were not sufficiently similar to the plaintiff's.  No one called upon the court to decide whether the defendant's copying was actionable in the first place.  But see Summit, 7 F.3d at 1443 (Ferguson, J., concurring and noting that "the Lanham Act permits a more direct dismissal of [the plaintiff's] claim" because "at no time did [defendant] do anything with regard to the lathes it purchased . . . that constituted a reverse palming off violation").

## IV.  CONCLUSION

Although CMSI's other theories of relief may support its assertion that Pacific Cycle took "an illegitimate short cut into a new market," CMSI Mot. at 1, its reverse passing off claim fails as a matter of law.  The court therefore DENIES CMSI's motion for preliminary injunction (Dkt. # 13).

The court GRANTS the parties' motions (Dkt. ## 23, 46) to seal Pacific Cycle's opposition memorandum, CMSI's reply memorandum, and various exhibits.  The court directs the parties to not include confidential information in their future memoranda, and

---

[4]To the extent that the Summit court brushed tangentially against the underpinnings of reverse passing off, it did so by citing prior decisions addressing communicative products. Summit, 7 F.3d at 1438 (citing Shaw v. Lindheim, 919 F.2d 1353 (9th Cir. 1990); Litchfield v. Spielberg, 736 F.2d 1352 (9th Cir. 1984); Lamothe v. Atlantic Recording Corp., 847 F.2d 1403 (9th Cir. 1988); and Smith v. Montoro, 648 F.2d 602 (9th Cir. 1981)).  The Ninth Circuit relied on the same precedent in deciding Dastar, and the Supreme Court reversed.  See Dastar, 539 U.S. at 28 (citing Twentieth Century Fox Film Corp. v. Entm't Distrib., 34 Fed. Appx. 312, 314 (9th Cir. 2002)).  Moreover, many of the decisions the Summit court cited focused on the similarity between the products at issue, not the legal foundations of reverse passing off.  See, e.g., Waldman Publ'g Corp. v. Landoll, Inc., 43 F.3d 775, 781 (2d Cir. 1994) ("The Ninth Circuit's conclusion [in Shaw] was based not on an analysis of what constituted a 'false designation of origin' but instead on the Ninth Circuit's determination that only bodily appropriation would create a likelihood of consumer confusion.").

ORDER – 10

1   to file all confidential documents as exhibits to a single declaration that contains no non-

2   confidential documents.

3        Dated this 15th day of September, 2006.

4

5

6        _____

7        JAMES L. ROBART
         United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER – 11